We'll hear argument next in Case 20-7622, Denezpi v. United States. Mr. Kimberly. Thank you, Mr. Chief Justice, and may it please the Court. The Double Jeopardy Clause implicates two distinct exercises of sovereign authority. First, the authority to say what an offense is, and second, the authority to put an individual in jeopardy for committing an offense. This Court has consistently assumed the importance to the dual sovereignty doctrine of both expressions of sovereign power. The analysis thus asks not only whether the two law-giving entities draw their authority from separate sovereigns, but also whether the two law-enforcing entities do so. The government disagrees. It says that the separateness of the offense-defining entities is all that matters. But that position would invite the precise abuses that the Double Jeopardy Clause was intended to prevent. And the CFR courts themselves provide the evidence. Assault, for example, is an offense under both tribal law and the BIA's Regulatory Criminal Code. According to the government, if Petitioner had gone to trial rather than taking a plea on the tribal offense and he had been acquitted, the very same prosecutor would have been free the very next day to bring a successive prosecution for a substantively identical offense, this time having honed his case and refined his proof based on the lessons learned in the first prosecution. That is not an outcome that the framers of the Double Jeopardy Clause would have thought tolerable. In arguing otherwise, the government focuses on a single word, offense, which it takes entirely in isolation and to which it applies rigid dictionary definitions. But the Bill of Rights prevents not only transgressions of the amendment's literal terms, but also governmental efforts to circumvent their protections. Blockburger itself embodies this anti-circumvention principle. It holds that technically different offenses codified in different code sections comprising different elements nonetheless may constitute conceptually the same offense for double jeopardy purposes, when, for example, one is a lesser included of the other. And our position is that the same Blockburger rule ought to apply any time a single sovereign undertakes successive prosecutions, regardless whether separate sovereigns have defined the respective offenses. And I welcome the Court's questions. Mr. Kimberly, just so I understand what you mean by the we have to take the prosecution, the source of the prosecution into account. Let's say prior to trial, the tribe charges petitioner here. And on day one, on day two, the federal government charges petitioner. Are those two separate offenses with which he's being charged? These are both charges in the CFR court? One in CFR court, one in federal district court. I think those are not the same offense, Your Honor, because it would be the tribe bringing the charge. I think what distinguishes this case. No, no, that's not what I'm saying. The tribe, there's a charge under tribal law. That's charged for the same activity, just what we're talking about here. But before trial, the federal prosecutor charges under federal law, just as you have here. But there is no trial yet. Are those two separate offenses? If I'm understanding Your Honor's hypothetical correctly, it's a tribe charging one offense. It's the federal government charging a federal offense. Exact same charges we have here. Exact same charges before Jeopardy has attached. It sounds to me like those are separate offenses to which the dual sovereignty doctrine would apply. Okay. Now, what undoes that? If, let's say, after that, you reach a, you're tried in the CFR court and we have what we have, the outcome we have here, then you have a trial in federal court. What changes the fact that you have two separate charges, two separate offenses? Well, I think, so there are two ways of answering this. I think the first way of answering this is to say that when the prosecuting entity the first time is a federal instrumentality that is relying on federal law to authorize a federal officer to prosecute a tribal offense in federal court, that is in effect the United States making the offense its own. After all, we need in the CFR court the operation of a federal law here. It's 11 CFR 11.108 to make the tribal offense enforceable by a federal officer in federal court. And that process, the court could say, in a sense, imbues the offense with, at least in part, federal character. And that is distinct, I think, if I was understanding Your Honor's hypothetical, it's distinct from when a tribe in a tribal court pursues a prosecution for that same offense. Thank you. Is that your only difference? Going back to our decision in Wheeler, the court in Wheeler went through quite a number of ways in which the Navajo tribal court at issue was subject to ultimate federal control. And I want to know what you see as the difference between the federal control recognized by us in Wheeler and the federal control at issue here in CFR courts. Well, I think the question in Wheeler, Your Honor, was just whether the tribes actually constitute separate sovereigns for purposes of the dual sovereignty doctrine. And so in undertaking that analysis, the court looked, as it later described it in Sanchez Valle, as the wellsprings of the authority that the tribe has both to define and punish crimes. The court acknowledged that there is congressional control over the tribes in certain actions that they can take, but that did not extinguish the core source of the authority the tribes have for defining and prosecuting offenses. So tell me what distinguishes it here. The question here is somewhat different. It's accepting that the tribes in the United States are separate sovereigns. It's who is bringing its sovereign, which of those two is bringing its sovereign authority to bear in prosecutions brought in the CFR courts. And our position is that it must be federal because the prosecutor in this case, the prosecutor in the Ute Mountain Ute Tribe CFR court, is a federal officer answerable to federal authorities. He is not a tribal officer answerable to tribal authorities. He draws his authority to prosecute, and the CFR court draws its authority to punish from the Code of Federal Regulations and from the United States Code authorizing the promulgation of those regulations. So would it have mattered if the tribe had contracted with the government to provide the prosecutor? The tribe had actually provided the prosecutor. I think the answer may well be yes, Your Honor. If the tribe were furnishing the prosecutor such that the prosecutor was answerable to tribal authorities so that one could accurately say that the prosecutorial discretion being exercised, the decision what charges to bring, what penalties to seek, what leniency to grant, what plea deal to negotiate were, in fact, expressions of tribal sovereignty and tribal authority, then I think the answer is we may well be in a different situation. But we know that... So it would be an easy fix if you were to win in this case. CFR courts could continue so long as the prosecutor was tribally controlled. I think that's right. And I would say that I think there are two easy fixes, Your Honor, both of which are substantially more respectful of tribal sovereignty than what happened here. First, you could have a 638 contract that allows the tribe to control and bring the prosecutions. Beyond that, you could also just have the simple administrative fix of reallocating the resources for these CFR courts to grants to the tribes to establish their own judicial system. There already are. These tribes are too small to make use of those grants. Well, I think the tribes... The grants aren't big enough. They're not big enough in light of the poverty of the tribes. Well, that's right. So the suggestion is rather than the federal government spending money on CFR courts, the federal government can spend money to allow these tribes to band together the way that they do under the CFR courts already to create tribal judicial systems of their own. In either event, either of those fixes would be more respectful of tribal sovereignty than forcing tribes to accept the federal government's taking over of responsibility to bring prosecutions on behalf of the tribes, which necessarily federalizes the prosecutions. Because, again, the prosecutors are, in this case and in the Ute Mount Ute Tribe CFR Court, are answerable to federal authorities. Mr. Kimberley, do you think... Let me ask you this. Why aren't you making the argument that the tribal crimes have been assimilated as federal crimes? Because if that were true, then you have two federal crimes, and you're just looking at Blockburger, right? Even under the government's theory. Do you think that would be a winning argument if you made it? I think it would be a winning argument, Your Honor. And I think... I would feel comfortable analogizing to the assimilation of state crimes under the Assimilative Crimes Act or the Major Crimes Act. I think what's a little different is here we know, for example, that Petitioner was, in fact, charged with a violation of the Ute Mount Ute Code. When an individual is charged under an assimilative crime under federal law, he or she is charged actually with the federal crime. So it's not assimilated. So you think it's not the same thing. I'm sorry. To be clear, our position is that when a federal officer is exercising federal authority in a federal court to prosecute a criminal offense of another sovereign, it takes an exercise of federal legal power to do that. And, again, we have that at 25 CFR 11.108. And that, in effect, does imbue for double jeopardy purposes the offense with the federal court. But I thought that you were making an act and enforce argument. I didn't understand you to be disputing that this crime was a tribal crime. I understood you to be seeing a distinction between the regulatory crimes and the crimes that were crimes that came from the wellspring of the tribes law. That is an important point to me, so I want to make sure I understand your position on it. So I'm not sure I understand the question. Are you seeing a distinction between the federal regulatory crimes and the tribal crimes? Or are you arguing that, say, 25 CFR 11.449 functionally assimilates the tribal crimes into federal law like the Assimilation Act does for some state crimes? We're not making a formal assimilation argument. I think it would be perfectly acceptable if the court wants to take that approach. But our principal position is that it doesn't matter and that for double jeopardy purposes, there's no meaningful distinction. Well, it may not make a meaningful distinction here. I acknowledge that. But I do want to follow up on this question. And I don't want to revisit Gamble. I was in dissent there, and so I must have been wrong. But here, am I correct that the tribal crimes are only enforceable in CFR court with the assent of the Secretary of Interior? That's exactly right, Your Honor. It's duplicative of 25 CFR 11.449. It's also 11.108, which is the provision that requires approval of the statute. And historically, as I understand it, that was an important feature of the law because the federal government, in its infinite wisdom, didn't want every tribal crime to be enforceable because they thought some of them were not sufficiently worthy or of federal respect. Is that right? I think that's part of it. If I may supplement that answer, Your Honor, I think it's also because the BIA itself has always understood that the CFR courts and prosecutions taking place within them are fundamentally federal and, therefore, must be consistent with federal law. And, therefore, a review of tribal crimes to ensure consistency with federal requirements for the operation of federal instrumentalities were recognized. Can a federal criminal statute include a racial classification? It's a fair question, Your Honor. I think there is a serious constitutional equal protection question about whether or not that's the case. So if we were to hold that this provision of the tribal code was really federal law, we would have to confront that question, wouldn't we? Well, I think you've got to confront that. One, I should be clear, that isn't a question presented here. I think the Court would have to confront that question perhaps in a future case, regardless, because there is a federal regulatory criminal code adopted by the BIA independent of tribal laws, and that, too, has the same racial classification as a precondition to its application. And if I might return to what I think of as the Barkas exception argument that I take you to be making, that the Court recognized that there are some instances where, even if they are nominally separate sovereigns, they function hand in glove to the point where we will find double jeopardy violations to occur, even if they are nominally pursued by separate sovereigns. And the federal government makes the argument here that the Barkas exception shouldn't apply because they didn't really get two bites at the apple here, that your client pled guilty and that, therefore, there's no real worry, double jeopardy concern that we should attach to this case. Can you respond to that argument? Well, this Court in Green addressed the question whether it makes any difference whether a criminal defendant is acquitted or convicted and rejected that distinction as relevant to the double jeopardy question. So there's no basis, certainly in this Court's cases, or I think sort of our general understanding of the purposes of the double jeopardy clause to say it makes any difference whether he was convicted the first time or acquitted. You know, I would say more generally, of course, there's 25 U.S.C. 2810, which calls on federal authorities to coordinate these sorts of things. There's, I would submit, no question that the BIA prosecutor is a federal prosecutor. He's directed by Congress to coordinate with the U.S. Attorney's Office with concurrent jurisdiction. That office with concurrent jurisdiction exercising the exact same sovereign power brought a, under Barkas, a charge for the same offense, and that is the heartland of the double jeopardy clause. And so I just don't see a distinction on the basis that he was convicted the first time. Is the prosecutor, the prosecutor in the CFR court is appointed by the federal government, and does he have to get the federal government's approval for each case that he brings under tribal law? In the sense that a prosecutor has to get approval to bring prosecutions, yes, he would seek it from the federal government. Well, I don't mean in the sense that, I mean, does, you are, imagine you are a CFR prosecutor. You've been appointed by the federal government but confirmed by the tribe. I take it. And now you want to bring a case. Do you have to go to Washington or somewhere or the U.S. Attorney and say, can I do it? I think, I'm not aware of any practical such requirement. All right. And is it the case that the requirement there differs in any respect from the requirement of a prosecutor in what is tribal courts throughout the nation? In other words, does a tribal prosecutor in tribal court have to get tribal approval? Does the, whatever approval the individual needs, the CFR prosecutor needs to get, if he has to get any? Now I think he doesn't have to get any. Does his role differ in any way from a prosecutor in a tribal court? I mean, not in. Is the only thing there that he's appointed by, or is there something else? He's appointed by, with the confirmation by the tribe, he's appointed by the federal government. Is there any other way in which he differs from a tribal court prosecutor that you believe is important? Yes. And I think it flows from the fact that he is appointed by federal. What is that? Okay, I've got the same point. He's appointed by the federal. He's appointed by the federal government. Well, you have read, as I've read, the scholar's brief. And it says, sure, there were a lot of tribal officials in 1883 appointed by the federal government. And moreover, they quote from the history and reports and so forth and so on. And you've read them. And they all say, the Bureau of Indian Affairs, this person is meant to be a tribal official in the CFR. It was then CFO, I guess. He's meant to be tribal in nature, just like the law is tribal in nature. I mean, you've read all those things. So what is your response to that? Because we have on the other side, on your side, he is appointed. And I take it at that time, maybe the police chief in the tribe was appointed. I don't know. But anyway, go ahead. Well, I think there are two responses to it. The first is, in any context, for instance, a federal prosecutor working within, you know, a large state, will, of course, also be a citizen of the state and, you know, have an interest in the same sort of thing. That's not quite what these quotes from the Bureau of Indian Affairs say. In fact, they're distinguishing. I mean, it's all in this brief. And I think it seems to be quite different from what any U.S. attorney seemed to be. But go ahead. I've interrupted you. Well, respectfully, Your Honor, I think the more direct answer is to say that that isn't the inquiry that the court makes under the Double Jeopardy Clause. The BIA, in promulgating the regulations that are presently enforceable in the CFR courts in 1993, dealt with a lot of these same issues in comments during the notice and comment period, and it rejected all of them. This is at 58 Federal Register 54407. And I'll read just a couple, and this is scattered all throughout the preamble to this rule. It says, one comment recommended deletion of secretarial approval of tribal ordinances. This recommendation was not adopted because courts of Indian offenses are federal instrumentalities, and therefore the laws they enforce cannot be inconsistent with federal law. Several commenters objected to the role that the assistant secretary plays in appointing judges. These recommendations were not adopted because courts of Indian offenses are federal instrumentalities and not tribal bodies. Federal supervision is therefore mandatory. Every aspect of what the federal officers in these courts do is an exercise of federal power as recognized by the BIA itself. Well, I guess, Mr. Kimberly, I think Justice Breyer was asking you for examples of how it would matter. I mean, it seems to me you're in a strange kind of position here. You're in a sort of halfway house. On the one hand, the government has the formal argument on its side. Look, you know, this is not the same offense because the laws are different. So you want to say, well, you shouldn't adopt that formal reading. But then on the other hand, you want to not think about the practicalities of the situation. So when Justice Breyer says, how does it matter, you say it doesn't matter how it matters. But I think you have to think it matters, you know, that, you know, not just that there's a formal way in which the prosecutor is a federal official, but in fact that that makes a difference on the ground. Because otherwise, why not just go back to the government's formal position? Well, and this is what I was driving at, Your Honor, with recognition that a federal prosecutor answerable to federal authorities will necessarily pursue federal priorities. So, for example, it may be a prosecutorial priority to charge drug crimes. But maybe the tribe doesn't actually care about prosecution of drug crimes. They really want to focus prosecutorial resources on other issues like sexual assault crimes. Those sorts of decisions in the system that has been set up by the BIA are necessarily federal. Now, you know, as a matter of comedy, of course it's true that federal officials can take into account the interests expressed by tribes. But nonetheless, those priority-setting decisions are inherently federal and may reflect the tribe's policy. The tribe seems to think of these courts as very tribal. You know, I mean, there's a tribal brief, and the tribal brief is on the government's side. And it says these are our courts. And, I mean, you know, in a way, you know, it's sort of like saying they're suffering from false consciousness, your argument. I mean, they believe these are their courts. They believe – it is certainly true that they rely on these courts to enforce their criminal laws. There's no question about that. But – and a tribe can make the sovereign decision to allocate responsibility for enforcement of their laws to the United States. But when they do that, that is, so far as the Double Jeopardy Clause is concerned, that is so far as their exercise of sovereignty goes. Why? Why? Why? I mean, look, if we just look to what the law is, I think it's – the law is a tribal law. Now, if we go back to 1400, tribal laws were enforced by tribal officials. Now we jump to 1800, and they're still enforced by tribal – oh, oh, wait. There are some tribal officials that the government wants to appoint. Now, that's why I'm puzzled, you see. I'm actually puzzled, because you could look at this individual that we're talking about and say the origin of his authority is he's a tribal official. And when the feds took over, they decided they'd appoint a few tribal officials, in which case both the law and the root of the prosecution are tribal. Or you could say, no, we have a new official. It's going to be a fed official, and they're going to really – and there's some evidence of this – that we're really going to get the tribe to be like Kansas City or something, you know. And so how do I do that? You see where I'm driving at? How do I do this? I do, Your Honor, and I guess I'm sympathetic to the consideration. What I would say is the easy fix here is just to allow the tribes actually to do the job of appointing prosecutors to exercise tribal authority directly and in an unambiguous way. That is not what's happening here. I would point the Court also, if I may, to United States v. Laura, which presented the question whether tribal courts – tribal prosecutors that were prosecuting nonmember Indians for tribal offenses were, in effect, acting as federal prosecutors, in other words, exercising delegated federal prosecutorial authority, or instead inherent tribal authority. The premise of the question presented in that case was that if the tribally appointed prosecutors were – even the tribally appointed prosecutors could be exercising federal power so as to preclude a later federal prosecution. Counsel, I don't understand why it's so problematic to have different federal officials with different perspectives on a particular matter and why that necessarily means that they should be regarded – why that is pertinent on the double jeopardy question. In the federal government, the EPA and the Army Corps of Engineers often have very different ideas about environmental matters. And, yes, at the end of the day, they answer to one authority, and that's controlling. But I don't know why it's so surprising that here you would say to one federal official, okay, we want you to represent the interests of the Indian tribe in their courts and their priorities. And the idea that he's the same as a U.S. attorney with a different set of priorities, I'm not sure that follows. Well, it would be, I think, an unusual situation where a federal official were made answerable to some other government in his exercise of federal authority. We're not aware of any other circumstances. Well, answerable, I suppose. I mean, but it's a rare situation, I would think, when the U.S. attorney comes in and he's got a set of priorities and they can prosecute those priorities in their office. But to then say to the official officer, the officer who is handling matters for the tribe, is that you've got to follow these same priorities just because the tribe has them. In other words, it seems to me you can sort of separate out the particular areas there. And the tribal officer or the officer assigned to the tribal cases might have different priorities to be applied on the reservation. And I don't know that that would necessarily cause such great consternation in the U.S. attorney's office. As a matter of practicalities, Your Honor, I think I agree. As a matter, the BIA prosecutor, you might say, serves sort of a different role than the prosecutor in the U.S. attorney's office. And the BIA prosecutor may take more heed of Indian federal comedy in the decisions that he or she makes. Well, that's much more concisely presented than I did, but that's my point, yes. But, Your Honor, that's exactly why Congress has 25 U.S.C. 2810. It requires these prosecuting entities to coordinate, not necessarily to stand for the proposition that they must all be rowing in the same direction on the public safety priorities that are driving their prosecutorial decisions, but it's to ensure coordination so that, for example, a CFR court prosecution doesn't preclude by operation of the double jeopardy clause a subsequent prosecution. There were charges here that could have been brought that would have resulted in the same sentence that did not violate the Blockburger rule with respect to the later Major Crimes Act prosecution. And if that sort of coordination had taken place, we wouldn't be here today. Thank you. Justice Thomas, anything further? It seems that your argument with respect to the CFR court, that it is basically a federal entity. If we accept that argument, wouldn't we have to then ask what authority, what appears to be an Article I court has over criminal laws or the enforcement of criminal laws? I think that is a subsequent question, just like Justice Alito's question about the racial or nationalistic categorization of the sorts of defendants who can be brought before these courts would be an issue that the court has to deal with. But if we conclude from that that, well, there can't be a conviction under an Article I court here, then it seems as though there would not be a double jeopardy problem. Well, undeniably, there was a conviction in this case, and courts martial are also Article I courts. I know, but those are traditional. I mean, those are military. And I think we've made exceptions for that as well as territorial. That may be so. Nevertheless, it is precedent for an Article I court entering a criminal judgment. You know, the sort of broader structural constitutional questions about these courts, I think, are ultimately distinct questions from the more limited question that's presented here, which I think turns simply on the idea that the federal government is responsible for the first prosecution and the second prosecution. Yeah, but I think you're requiring us to accept an assumption that this court is almost the equivalent either of a tribal court or another federal court. I mean, we have to assume that it has the authority to convict this particular petitioner here. That's true, Your Honor. Justice Breyer, anything further? Justice Alito? Justice Sotomayor? Let me stop and backtrack. Are you saying that your win necessarily raises these questions, or are you saying how you win? No, I think these questions are implicated entirely independent of how the court resolves the question presented here. Justice Kagan? Justice Gorsuch, anything further? Justice Kavanaugh? Both the BIA prosecutor and the AUSA are in the executive branch, correct? That's correct. Ultimately answerable to the President. Thank you. Justice Barrett, anything further? Thank you, Counsel. Ms. Ross?  Petitioner's violent sexual assault violated the laws of both the Ute Mountain Ute tribe and the federal government. Petitioner thus committed two offenses, and the Double Jeopardy Clause poses no bar to two prosecutions. For nearly two centuries, this court has recognized that the clause only prohibits two prosecutions for the same offense, and that violating the law of one sovereign is not the same offense as violating the law of another. The court also has held that the tribes and the federal government are separate sovereigns for these purposes because they derive their power to prescribe conduct from different sources of authority. Indeed, there's no question in this case that if Petitioner had been convicted of his tribal offense in a tribally operated court, his Double Jeopardy Claim would fail, no matter how much assistance that tribally operated court received. Petitioner argues for a different result here only because the Ute Mountain Ute tribe made the sovereign choice for its tribal code to be enforced in a court of Indian offenses. But the Double Jeopardy Clause focuses on the offense, and it is silent as to the forum of prosecution or the identity of the prosecutor. Reflecting the clause's texts, this court's decisions have likewise focused on the ultimate source of authority for the offense, which here is unquestionably tribal, as I take Petitioner to concede. And the court has rejected similar inquiries that would turn on a sovereign's functional autonomy, explaining that they would lead to unclear and inconsistent results. But even if the nature of the court or the prosecutor mattered, Petitioner would fail his own test. The authority for Petitioner's first prosecution derived from the tribe's preexisting power to prosecute offenses between Indians, which the tribe still possesses today. The tribe has simply made the sovereign choice for the time being, which it can change, to use a court of Indian offenses to help enforce its laws. That exercise of the tribe's sovereignty warrants respect under the Double Jeopardy Clause, as every relevant sovereign, including the tribe itself, has argued to this court. I welcome the court's questions. Mr. Ross, just to, for my purposes, clarify the underlying facts in this case, could you just explain why the first trial winds up or the first proceeding winds up with 140 month, 140 days, was it 140 days or 140 months? It was 140 days, Justice Thomas. For sexual assault, and then the ultimate federal case winds up with, is it 360? I believe that's correct, Your Honor. So the reason why is because... I'm sorry, 360 months, not 360 days. Yes, yes, Justice Thomas, 360 months. And the reason why is because, as this court recognized in Wheeler, because it's equally true to go to some of Justice Sotomayor's questions with respect to tribally operated courts, Congress has limited the sentence that can be imposed in either a court of Indian offenses or a tribally operated court. It has, in fact, defined Indian courts for purposes of the Indian Civil Rights Act to include courts of Indian offenses. So in either forum, the cap applies. That's generally one year, and I believe it's a $5,000 fine. It can be a little bit higher in some circumstances, but those apply. But I guess my question is more, why spend time on that when there's a more serious underlying offense? Oh, certainly, Justice Thomas. So I think because, as some of the questions suggested earlier, the court of Indian offenses is concerned with violations of tribal law and offenses between Indians on the reservation. And so because the tribe still has a sovereign interest, as expressed through the criminalization of this conduct, I think the fact that a lesser sentence is available doesn't necessarily mean that there isn't an interest to be served there. I would also point out that the court of Indian offenses prosecution in this case happened much more quickly, and so that prosecution also provided immediate incapacitation in a way that a federal prosecution that comes later may not. Well, or one reason to do is to get a dry run on the federal trial. Right? There's a lot at stake here. The sentence shows that. You want to make sure you have as effective a prosecution as you can. So, you know, run a prosecution through the CFR court, see what evidence they has, whatever, and then take a much stronger case when there's more at stake. So respectfully, Mr. Chief Justice, I don't think there's any suggestion or evidence that that happened either in this case or more generally. I would point the court, and I think this is responsive to some of the questions from Justice Kagan and Justice Sotomayor and others about how this works on the ground. I'd point the court to page five of the former United States attorney's brief, where those former United States attorneys who had jurisdiction over districts that include courts of Indian offenses make very clear that they did not supervise BIA prosecutions, and they did not, to their knowledge, none of the AUSAs did either. There just simply isn't this commingling. Well, I'm not suggesting anything happened like that here, but it certainly is a possibility, and I'm not suggesting there's anything wrong with it. I mean, that's how the Double Jeopardy Clause works with respect to state prosecutions. But I guess I share, if it was Justice Thomas' concern, that it seems unusual that you waste time on a serious offense with such a small possibility, small possible sentence when there's a lot more at stake and what would follow. So respectfully, I don't think it's a waste of time from the tribe's perspective. The tribe has criminalized this conduct. This court has recognized that the tribe still has the power to criminalize this conduct. And so that expression of the tribe's displeasure with this conduct and condemnation of this conduct, I think, is a significant aspect of sovereignty itself. The other point I would make — Well, you can say that, but I suppose the tribe, if it may be more interested or somebody, in the fact that the guy's going away for 30 years as opposed to 140 days, if I've got the math right. And, I mean, yes, the 140 days, or really it was time served, might show that the tribe has these particular interests. But I suspect their interests are being more served by the 30-year sentence in the other form. So, again, because the same limitations on sentences apply in tribally operated courts, precisely the same thing happened in Wheeler when the limits were, in fact, even lower on tribal prosecutions. There was an initial tribal prosecution with a limited sentence because of that limitation, and then a subsequent federal prosecution with a greater sentence. I think that's sort of the common fact pattern and, indeed, is a reason why having the federal prosecution not be barred by the prosecution for a tribal offense is a good thing, not a bad thing. Well, Ms. Ross, these CFR courts have long been and sit uneasily with our separation of powers, as Justice Thomas pointed out. And the BIA has acknowledged for a century. But we can avoid all that, it seems to me, if we apply our existing double jeopardy jurisprudence under Barkas. And my first question to you is, does the government acknowledge that there is what I've called the Barkas exception, that though there may be nominally two separate sovereigns involved, even in those circumstances, sometimes double jeopardy can be implicated? So, Your Honor, I think Barkas left open what Justice Ginsburg described as, I think, the possibility of that exception. I don't think that's borne out in the last 60 years of precedent since Barkas. Okay, but the government acknowledges that possibility exists. No, Justice Gorsuch. So I would say that that possibility has essentially just not borne fruit, and it should not be taken. Well, it's actually been applied in the lower courts, right? I mean, lower courts have applied that exception. So the lower courts have considered the exception. To our knowledge, there's no court of appeals decision actually finding it satisfied. And I think that, combined with the fact that the court itself has not cited Barkas for this proposition, and that it sits uneasily with the remaining jury. Are you asking us to overturn that language in Barkas or reject it? So I don't think it would require an overturning. I think it wasn't a holding at the time. And, in fact, Justice Brennan in dissent noted that if the facts there didn't qualify, nothing would. Okay. So let's assume it exists, then. At least it's a possibility. You're not asking us to reject it. That's how I'll take your answer. Why wouldn't this circumstance qualify? And if it doesn't, maybe nothing would, I guess is my question to you. You have a law that has to be approved by a federal executive officer, a federal prosecutor, before a federal forum. And, as I believe you pointed out, this initial prosecution, if it isn't, strictly speaking, a dry run or a hand-in-glove sort of thing, provides for immediate incapacitation in a way that might not be possible in federal court. If this doesn't qualify, would anything? So, respectfully, Justice Gorsuch, I actually think that the Barkas quote-unquote exception does not exist as a matter of sort of binding law. Okay, but if we disagree with you about that and we take our language of Barkas seriously. Certainly. So I don't think this would qualify, and it's for many of the reasons that I was providing to the Chief Justice. There's no coordination on the ground. There's no suggestion that there has been any attempt to circumvent anything here. Really, the tribal prosecutor or the BIA prosecutor is enforcing the tribe's interest in having its own law enforced, and the federal prosecutor is looking at whether federal interests have still been vindicated under federal law. Can you imagine – I'm sorry. No, please. One last question. Can you imagine a circumstance in which that Barkas exception would apply? No, Your Honor. I think the better way to handle that would be to use what this Court has developed since Barkas, namely the Ashe versus Swenson doctrine when you have a prior acquittal giving that collateral estoppel effect. And I think the reason why is because Ashe is already a very fact-intensive doctrine. So two convictions can never implicate Barkas. I think that's right, Your Honor. I think that's consistent with this Court's decision in Dixon, where Justice Scalia explained that so long as you have two separate offenses, as we think you clearly do here under the text of the Double Jeopardy Clause, you would be able to bring two separate prosecutions. Ms. Ross. Yes. I count at least five or six Supreme Court cases that emphasize not only the power to enact criminal law, but also the power to enforce it, to prosecute it. So we have a long history of over 100 years of recognizing that it's not just the source of the power, the law, but the power to prosecute it, which is what your plaintiff is saying. And I read Barkas as basically acknowledging that, that the Barkas exception was born on the presumption that the Double Jeopardy Clause doesn't want one prosecutor to decide the sequence of prosecution to give itself an advantage, in the way that Justice Roberts pointed out. Here we have one federal prosecutor deciding whether or not to give itself the potential of a pre-run of a case by choosing a lesser crime to preview the criminal prosecution, and then sequentially that same prosecutor, a federal prosecutor, to decide to prosecute a federal crime. And so that's where I'm having my problem, which is you want a reading of the Double Jeopardy Clause that takes away a century of decisions that say, it's not just the source of law, it's the source of who's prosecuting it. So Justice Sotomayor, I think there's a lot in that question, and I'd like to sort of try to get to all of the points. The first is that, you know, I certainly acknowledge that this court has talked about the power to prosecute at times. I think that was in cases where, as is often true, the power to prosecute and the power to prescribe ran together and traveled together. And so I don't read those decisions to necessarily adopt a second test in the way that Petitioner suggests. I think that's particularly clear. No, it's one test. You have to have both, as he says, a source of law and a source of prosecution that are different. If you have the same, then you're going to have a double jeopardy problem. I think the problem with that understanding, Justice Sotomayor, though I do want to get to why I think we would win even under that understanding, but I think the problem with that understanding is that Petitioner has not even tried to find a hook for the prosecutorial power prong in the text of the double jeopardy clause. As this court explained most recently in Gamble, when it was asked to reconsider and, in fact, reaffirmed the dual sovereignty doctrine, the doctrine is based on the word of the text. Except Barkis focused in on it by noting the exception. So it understood that double jeopardy had something to do both with offense and who's enforcing it. Is it the federal government or is it the state? And here we have a hybrid situation and we're being asked to figure out who's enforcing the law, the tribe or the federal prosecutor. And here, let's not forget that the federal prosecutor charged this as a federal crime, the U.S. versus this defendant. He didn't charge it as the tribe versus the defendant. So, Justice Sotomayor, I'd like to take one more run at sort of the first half of the question and then pivot to the second half. I think on the first half, there's just nothing in the text of the clause that speaks to the power to prosecute. It's phrased in the passive voice. It's focusing on the offense. It says nothing about the forum of the prosecution or the identity of the prosecutor. I think that's particularly significant because it's common ground here that at the time of the framing, it was entirely possible that state courts would, in fact, be the forum of prosecution for federal offenses. So how does the tribe hear? Does the tribe have any voice in what charges, tribal charges the tribe brings? Absolutely, Justice Sotomayor, and that gets to the second half of the question. I want to emphasize the many ways in which the tribe does have control here, and I think this brings up the administrability problems that were discussed earlier because I take it on petitioner's view any time one of those levers was switched in a different direction, you would need a new analysis. So to talk about how this actually works in practice, the tribe has the decision in the first instance whether to have a court of Indian offenses or whether to use its own tribally operating court. Does the tribe decide have any input into the charges the federal prosecution brings? Yes, Justice Sotomayor. Does it say, yes, you can charge this individual with this crime? So I do not – there's nothing in the regulations on this. My sense is that that is not done on a charge-by-charge basis. It is done at a broader level of generality, so the tribe can choose to have its ordinance enforced in the first place. It can obviously change the way its ordinance is written if it thinks it's being applied improperly, and it can convey just the sorts of prosecutorial priorities that I think my friend stated it could not. So the tribe can say, you know, yes, we want DUI prioritized. What do I look at to see that? I'm sorry? What do I look at to see that? So that last point, I think, is just simply an absence of any evidence in the regulations to the contrary. I mean, I have been informed that that is how this works. I think it's also clear from the tribe's own brief. I mean, Ms. Ross, what would happen if the facts were different? I mean, I think you have a good case, and the tribe backs you up on this, that the tribe seems to think that this is a quite tribal enterprise at its heart, but I see nothing to prevent it from turning into something entirely different. I mean, suppose you had a case in which the prosecutors for this court were all detailed from the regular U.S. Attorney's Office for a period of a year, had established relationships with the U.S. Every week the prosecutor would come in and talk to the U.S. attorney about what was going on in the trial court. There was a list of tribal laws that the U.S. attorney was comfortable about enforcing and a list that the U.S. attorney was not comfortable about enforcing, that the tribe really had no say in this whatsoever, that it was top-to-bottom, a U.S. attorney-run decision-making as to which tribal laws would be applied in what ways. I mean, would you still be here saying the same thing? So, Justice Kagan, I take the hypothetical to suggest that the regulations would have changed tremendously because none of that would be possible under the current regulations. So, you know, I just want to be clear that under the current regulations the tribe can pull out of the system, the tribe can appoint the prosecutor, it can pull its own ordinances out, et cetera. It has a lot of control. In the hypothetical world of regulations that I think you're imagining, I think we would still be making the same argument, and I think that that argument just comes down to the text of the Double Jeopardy Clause. Isn't that a problem? I mean, and in fact, isn't historically, I mean, historically these courts have not always been so friendly to tribes. They were not created to be friendly to tribes. And the hypothetical Justice Kagan posited was, in fact, true for much of our history. So why should our double jeopardy analysis turn on the graces of the government's regulations today? And on what basis do you really want to make the argument that double jeopardy wouldn't attach, say, 100 years ago the way these courts were operated? So, Justice Gorsuch, I think the reason why we would make that argument is because so long as the tribe still had the authority to say, yes, you know, we're adopting a criminal code and that code is being enforced. But that code only pertains to the extent that an assistant secretary of the Department of Interior says it pertains, right? So, Justice Gorsuch, that was equally true in Wheeler. The tribe there had to have its tribal code approved before it could have a court of Indian – or excuse me, a tribal court. That's true, correct? I'm sorry? It's true that it's up to the secretary of the Interior or the assistant secretary of the Interior. So it is true that there has to be a tribal – that there has to be assistant secretary approval. I believe it's under 11.449. But, again, that was equally true in Wheeler. And this court said, and I think it reemphasized – So let's just take Justice Kagan's hypothetical, which wasn't so hypothetical. And the assistant secretary says, I find many of these tribal laws to be savage. And we will not enforce them. And instead, we're going to enforce only our written code, written by bureaucrats at the Department of Interior, enforced by an executive officer who may report fully to the U.S. Attorney's Office, before – and another executive employee who happens to be the, quote, judge in the case. No double jeopardy then? There would be double jeopardy then, Justice Gorsuch, because the key difference there is that the federal government has defined the offense using its own sovereign authority. The difference, and what I took to be Justice Kagan's hypothetical, was that you still have a choice of the tribe to use a tribal court – or, excuse me, a court of Indian offenses. So then, if that's true, your concerns about administrability rear their ugly head again, don't they? Because now double jeopardy turns on whether the offense being charged comes from the assistant secretary's choice of a tribal law or his own criminal code. I don't think that raises an administrability problem, Your Honor, any more than the fact that state law versus federal law raises an administrability problem. That's sort of always true. So it does, though. You'd say that in those cases where we have federal law, the assistant secretary's personal code that he's written, that's a double jeopardy problem, right? Yes, Justice Gorsuch, and that flows from the text. And if that's true, then why isn't his selection of which tribal offenses shall be enforceable and which shall not be subject to the same rule? Because each of those offenses is still an exercise of the tribe's own authority. I want to be clear, I don't think this is actually happening on the ground, that the assistant secretary is saying, well, you know, I don't like this ordinance, so I'm not going to allow its enforcement. But I think either way, it's still the tribe's own sovereign authority. But just so I'm clear, the assistant secretary can curate the tribal code and there'd be no double jeopardy problem, according to the government. I think that's correct, Your Honor. Of course, the tribe could still have the authority to pull out of the Court of Indian Offenses altogether, to pull its offenses out. And so, again, this just goes, and I think does go to the administrability problem on petitioner's rule, that in each of these ways, the tribe has authority here to sort of calibrate how much or how little of a role it wants to have. I think one important point here is that this tribe actually used to have its own tribally operated court. It chose to opt into the Court of Indian Offenses. It could equally choose tomorrow to opt out of the Court of Indian Offenses, and that's because this is a prosecutorial power, to those who think that that is significant here, that resides with the tribe, just as it has, as Sanchez-Valle notes in footnote, I believe it's five, from sort of primeval times. You were going to list some others. You were going to list some others when Justice Sotomayor was talking to you. Other respects in which the tribe can control either the presence of the prosecutor and the judge who appoints the judge. The judge is federally appointed. Federal. Okay. So the prosecutor, they can opt in or out. And you said at one point, I thought that they can decide who the prosecutor will be, and I thought you said they could decide whether this prosecution will go forward, and are either of those things true? So the first one is true, Justice Breyer. 11.204, I believe it is, provides for the. And that's in your brief. Yes. Provides for. Anything else? Okay. So I want to clarify. I am not aware of it being true on the ground that the prosecutor would, or that the tribe would say we don't want you to prosecute Mr. X or we do want you to prosecute Mr. Y. Okay. Not that. Is there anything else you want to bring up? Yes. So there are sort of the broad prosecutorial priorities that I mentioned earlier from the regulations. They can also. How do they set the priorities? So I think there's two ways. There's one, there's just sort of conversations. But two, of course, because the tribe maintains the ability both to rewrite the law and to pull the prosecutor function if it wants to contract for that instead entirely, it does exercise a fair amount of control over the prosecutor, him or herself. The others that I would note, you know, they can contract for the clerks here. They contract for the public defender service and a bunch of other administrative capabilities. They also decide whether, as I was mentioning earlier, tribal law is enforced in this forum at all. And, of course, they always have the option to choose to have a tribally operated court. Who are these prosecutors? So I'm not sure if I'm understanding the question correctly. I mean, you know, how do they get picked? You know, you can imagine a couple of different systems. You know, one is very tribe-centric. The tribe gives a list to the BIA, and the BIA says those look like good people. Or, on the other hand, you could imagine a world in which they were all detailed from the U.S. Attorney's Office. Or you could imagine things in between. What are they? So, per regulation, Your Honor, they have to be approved by a vote of two-thirds of the tribal council. And so I think, you know, I apologize I don't know exactly the details. My sense is that it probably does differ between different courts of Indian offenses because these are spread out, you know, a little bit. But the tribe has to give its approval through a two-thirds vote. And I think it seems as though, you know, given that, that there is a fair amount of discussion about these things. And, of course, again, the prosecutor can be chosen by the tribe if the tribe elects to contract for that function. And I think, just to take Petitioner's concession, that, you know, that would make a difference here. I think that sort of brings up precisely the administrability points that you noted in your opinion for the court in Sanchez-Valle that, you know, the historic analysis allows us to classify what this court referred to as broad classes of governments for purposes of the Double Jeopardy Clause. Whereas on Petitioner's view, I think you would need a new analysis, not only for every court of Indian offenses, but for every time they change something like the prosecutor, perhaps, you know, like the I mean, it strikes me that the Petitioner has a fairly simple administrable rule. And it would go something like this. You know, with respect to these courts, you know, they all differ on the ground. And maybe some of them are functioning perfectly. Maybe all of them are functioning perfectly. But there are dangers here, you know, of the kinds that I was trying to suggest in the hypothetical I gave you. And in order to forestall those dangers, we just have one simple rule, which is that the tribe has to pick the prosecutor. I mean, that's a perfectly administrable rule. Why not? So I think the why not is really the text of the clause. I think that the Double Jeopardy Clause does not protect against everything that one could envision as a jeopardy in theory. It protects against double jeopardy or two prosecutions for the same offense. But that really makes your argument just like, here's what the text says. The text is all about law. It's all about law. It doesn't really matter what the facts are, what the dangers are, whether every one of these prosecutions becomes a dress rehearsal for the next bigger prosecution. We just close our eyes to all of that, and it's just like, is it the same law? So I do think that that is a perfectly appropriate way to resolve the case. To take the much more practical concern about the prosecutor, you know, I think if you had a rule in which the tribe, as long as it selected the prosecutor, it was fine to have these two separate offenses prosecuted separately. You know, I think there are good reasons why tribes choose not to appoint the prosecutor themselves. That is a choice that's available to them under the regulations, and I think, you know, the fact that this tribe has chosen not to do that is itself a sovereign choice that warrants respect. If I could make one other point with respect to sort of the animating principles of the clause here, I think it's important to think about this case in the context of other criminal defendants and public safety and victims. If Petitioner is a member of the Navajo Nation, as was his victim, if Petitioner had stayed on the Navajo Nation reservation and committed this sexual assault, there's no question that he would be subject to one prosecution for a tribal offense and one prosecution for a federal offense. That's essentially the facts of Wheeler with a slightly different crime. And so I think what Petitioner is asking for here is really a different rule based on the happenstance that he went to the reservation of a tribe that uses a different form of tribal court. And I don't think that there's anything. Suppose someone – you mentioned that the defendant is a – I'm sorry, the Petitioner is a member of the Navajo Nation. Suppose someone who is of Indian ancestry has not associated at all with a tribe and says, I don't identify as an Indian, can that person be tried before a CFR court? I apologize, Justice Alito. I'm not sure the answer to that question. I think it goes to how the code defines an Indian, and I just – I haven't sort of run that because it hasn't been presented in this case. I am a little concerned with your answer to Justice Kagan, because I understand 1999, 2000, the United States took the position with a – not this tribe, but another tribe – that it could unilaterally establish a CFR court without the tribe's permission and appoint a magistrate without any need for confirmation by the tribal governing body. I've been looking for it in my notes and just forgotten, but assume that that example does exist. Your answer leads me to believe that Justice Kagan's simple rule is much more administrable than us writing an opinion today that says, because – and I'm not even sure we have enough facts to say this – all of these things exist. The tribe has enough control over these CFR decisions or being a part of this process that having a prosecutor in this case is okay. That seems to be the opinion we'd have to write. If you're maintaining that the U.S. can do what it did at the turn of this – a few years ago. So, Justice Sotomayor, that example in the brief is the Kewa Pueblo, and what happened there actually doesn't implicate the issues in this case at all, because that court, when it was constituted by the Secretary of the Interior, because the tribe was unable to provide the basic due process rights required by the Indian Civil Rights Act, that court could not apply the tribe's own law. So, the Secretary did waive the requirement for the institution of a court of Indian offenses and the selection of the magistrate, but not with respect to the ability to prosecute the tribe's own offenses. So, you just simply wouldn't get that situation from this case. Thank you, counsel. Justice Breyer, anything further? Justice Alito? Justice Gorsuch? So, I just want to make sure I understand your position, that the Assistant Secretary could create his own court, appoint his own prosecutor, tell him to report to the Department of Justice, appoint the judge, and then curate the tribal code and choose which tribal offenses can be prosecuted, and there would be no double jeopardy problem, right? I think that is right, Justice Gorsuch, with a very serious and substantial caveat that it would depend on whether the tribe retained the authority to not have a tribal code that is enforceable in the court of Indian offenses. And then, I take it the government does agree, though, that under the Assimilative Crimes Act, when it assimilates a state law, that becomes federal law and double jeopardy attaches, right? That's correct, Your Honor, for precisely the reasons that Petitioner provided, that does become an offense under federal law. And then finally, there was a Judge Calabresi opinion, United States versus all assets, in which he did find the Barkas exception potentially applied and remanded because the state would receive certain assets in forfeiture. Do you think that case is wrongly decided? Your Honor, you know, I think it sort of holds out the prospect of there being a Barkas exception. I'm not sure that – No, he found the Barkas exception and remanded to see whether it applied on the facts of that case. And I'm just asking, do you think it's correctly decided? So to the extent that it would mean that there would be a Barkas exception, which would bar the second prosecution, then, yes, I think it's incorrectly decided. Thank you. Justice Kavanaugh. Thank you, counsel. Mr. Kimberly, rebuttal. Thank you, Mr. Chief Justice. Just a few clarifications. First, our position to Justice Kagan's question is indeed that if the tribe controls the prosecutor, we don't have this problem. To be clear, it's not just the appointment, but it's also that the prosecutor in turn is controlled by and answerable to the tribe so that the prosecution properly can be called a tribal prosecution. In the words of Sanchez Valle, that the prosecuting entity derives its power from the tribe. That manifestly did not happen here because the prosecutor is answerable to federal authorities under the Code of Federal Regulations and the United States Code. There was some attention in my friend's presentation to whether or not these tribes have the authority to pull out from these CFR courts, and both factually and legally, they really don't. First, as a factual matter, Justice Sotomayor, as you noted, and this is cited on page 8 of our blue brief, is the Kewa Pueblo was required to assume jurisdiction under a CFR court, and that was in 2020, just 18 months ago. It was very, very recent. Beyond that, the Assistant Secretary for Indian Affairs has to approve under the Ute Mountain Ute Codes Constitution any ordinance that the Ute Mountain Ute tribe purports to adopt. And so in order for it to adopt the kind of judicial system that would be necessary to do away with the CFR courts, it would require the BIA's approval. And beyond that, in any event, we have at page 8 of the tribes brief and page 9 of the United States brief an observation that these courts really are only made available to the tribes and pueblos that cannot afford judicial systems of their own. Just as a factual matter, they don't really have a choice to do away with these courts. And so as I said in my opening presentation, far more respectful of tribal sovereignty would be simply to allow the tribes to appoint their own prosecutors to act in these courts in the interests and exercising the sovereign authority of these tribes, or otherwise just to give them the resources necessary to establish their own systems. If the Court doesn't have any further questions, I'm happy to rest in our briefs. Thank you, Counsel. The case is submitted.